## JACKSON v. RAISOR.

Court of Appeals of Kentucky.

May 9, 1952.

See also 311 Ky. 803, 225 S.W.2d 657.

Charles L. Hobson and Ardery & Hobson, Frankfort, for appellant.

John Darnell and Funk, Chancellor & Darnell, Frankfort, for appellee.

CULLEN, Commissioner.

Raymond Raisor, who was the highest bidder for certain real estate at a voluntary auction sale at which O. N. Jackson (the owner of an undivided one-half interest) had offered the real estate for sale, sued Jackson for damages for "loss of bargain" resulting from his inability to secure title because of the refusal of Jackson's wife (the owner of the other one-half interest) to join in a deed to the real estate. Raisor's petition alleged that the reasonable market value of the real estate at the time of the auction sale was $5,000 more than the price he bid at the sale, and he sought damages for such difference in value. The jury returned a verdict for $2,500, and from the judgment entered on that verdict the defendant Jackson has appealed.

Jackson's contentions are: (1) He was entitled to a peremptory instruction, because (a) the auction sale was a free, fair and voluntary sale and therefore the price obtained at that sale must be found to be the fair market value of the property, and (b) the plaintiff introduced no competent evidence to show that the fair market value of the property exceeded the auction sale price; (2) even if it be conceded that some of the plaintiff's evidence as to value was competent, the remaining evidence was incompetent and its admission was prejudicial error; (3) the court erroneously admitted incompetent and prejudicial evidence as to special damages; (4) the instructions were erroneous; and (5) the verdict is excessive and was the result of passion and prejudice.

We can find no support for the contention that the price obtained at the auction sale is conclusive as to fair market value. It appears to be the general rule that the price received at a free and voluntary auction sale is competent evidence of value. 20 Am.Jur., "Evidence," sec. 373, p. 340; 31 C.J.S., Evidence, § 182, p. 886. But no court seems to have held that the auction price is conclusive evidence, and we are not sufficiently convinced of the merit of the contention to establish such a precedent. Indicative of reasons why the auction sale price in this case should not be held conclusive evidence of value, are the fact that Mrs. Jackson refused to sign the deed because she thought the price was too low, and the fact that Jackson attempted to prove that the auctioneer through collusion with Raisor cut off the bidding too soon.

Contentions (1), (b), (2) and (5) are closely related, and all involve the basic question of what kind of evidence is admissible to show the market value of real estate. We will consider the question in relation to the various kinds of evidence offered and admitted in this case, which were:

1. The testimony of the plaintiff that on the day of the sale a Mr. Henry offered to buy the real estate from the plaintiff at a $1,000 profit.

2. The testimony of the plaintiff that "I figure I lost at least $5,000 by being messed up."

3. The testimony of Mr. Roy Lewis, a real estate dealer, that approximately one month after the auction sale, he acquired the real estate from Mr. Jackson in a trade, in which he paid Mr. Jackson $12,500 in cash and deeded him a house on Devil's Hollow Hill which, for the purposes of the trade, they valued at $8,000.

4. The testimony of Mr. Lewis that, seven months after the auction sale, he traded the real estate to a Mr. Pennington, for a house in Tanglewood Subdivision and $7,000 "to boot," and that he valued the Tanglewood house at $20,000.

5. Proof that the deed of the real estate from Jackson to Lewis carried Federal Revenue Stamps in the amount of $21.45, indicating a consideration of from $19,000 to $19,500.

The evidence of the offer made by Mr. Henry (No. 1 above) was incompetent. Brock v. Harlan County, 297 Ky. 113, 179 S.W.2d 202.

The plaintiff's statement that he figured he "lost at least $5,000 by being messed up" (No. 2 above) clearly was no evidence as to value.

The question of whether the evidence concerning the two trades (Nos. 3 and 4 above) was competent is one on which we find little authority to serve as a precedent. We do not find that any court has held such evidence to be competent to prove value. To the contrary, in Hay v. Boggs, 77 Wash. 329, 137 P. 474, the Supreme Court of Washington held that evidence as to the values placed by the parties on properties being exchanged or traded was not competent to prove the value of one of the properties, because the agreed values often may be fictitious or far from the real value.

It seems to be the general rule that "market value" means the highest price obtainable in the open market for *cash*. 55 Am.Jur., "Vendor and Purchaser," sec. 556, p. 950. It is obvious that if evidence of a trade or exchange is to be admitted for the purpose of establishing market value, the value of the property received in trade must be fixed in terms of money in order to have any meaning. Since the cash value of real estate is never capable of absolute determination, but is necessarily an approximation, it may be doubted whether in any case the value of property received in trade, even if proved according to accepted methods, should be received as evidence of the value of the property for which it was traded, because to do so amounts to a pyramiding of approximations. However, it is unnecessary in the case before us to answer that question, because here there was no competent proof as to the market value of the property received in trade, but only testimony as to the value the parties placed on the property for trading purposes. We agree with the Washington Court that this kind of testimony is not competent.

A further reason for rejecting the testimony as to the trade for the house in Tanglewood is that this trade occurred seven months after the auction sale, and there was no proof that the Jackson real estate was in the same condition as at the time of the auction sale. It is conceivable that valuable improvements may have been made upon the real estate during the seven-month period.

The question of whether the amount of the revenue stamps on the Jackson-Lewis deed is admissible to prove market value is again a novel one. A diligent research discloses only one case on the question, in which the Federal District Court for the Southern District of New York said that "the number of revenue stamps would not establish value". United States v. Certain Lands Located in Town of Highlands, etc., D.C., 57 F.Supp. 96, 101. Evidence as to the amount of revenue stamps on a deed certainly is of secondary quality, and may approach the character of hearsay evidence. The ultimate fact sought to be proved is the market value of the property; the price at which the property was sold is direct evidence bearing on the question of value; but the revenue stamps merely speak silently

of the fact that, if the vendor· was an honest taxpayer, the price at which the property was sold did not exceed the amount evidenced by the revenue stamps.

We are of the opinion that evidence of the amount of revenue stamps on a deed is not entitled to substantial weight, and is not sufficient, standing alone, to prove market value, although it might be admissible to corroborate or discredit testimony as to sale price.

We are led to the conclusion that the plaintiff did not establish, by competent evidence of probative value, his right to recover substantial damages for loss of bargain.

Further errors occurred upon the trial, and we will briefly indicate the nature of the errors in order that they may not recur·in the event of a new trial.

The plaintiff was permitted to testify as to the inconvenience he suffered as a result of his inability to obtain title to the land purchased by him at the auction sale. This testimony related to actions the plaintiff took in reliance upon the consummation of the sale. The testimony was incompetent because the only damage the plaintiff was entitled to prove, under the pleadings, was the excess of the real market value over the auction sale price. The admission of the testimony clearly was prejudicial.

The instructions were so phrased as to assume that the real market value of the property exceeded the auction sale price. This was error, and upon a new trial the instructions should make clear that the plaintiff's recovery is to be predicated upon a showing·that the market value exceeded the auction sale price; and the amount of the recovery is to be the amount, if any, of such excess.

The appellee Raisor, on this appeal, has taken the position that under the decision on a former appeal of this case, he was entitled to an award of substantial damages on the basis of the kind of evidence he introduced. See Raisor v. Jackson, 311 Ky. 803, 225 S.W.2d 657, 660. What we said on the former appeal was that if the evidence "of the contract and its breach" should be the same on a new trial, the instructions should authorize an award of substantial damages, "if they are proven". That appeal did not involve the question of what kind of proof is competent to establish market value, and the opinion did not purport to approve the kind of proof the plaintiff has relied upon.

Upon the two trials already had in this case, the breach of contract by Jackson has been established conclusively. In the event of a third trial, the issues should be limited to the question of damages, under proof in accordance with accepted methods of proving market value, such as the estimates of qualified witnesses, or evidence as to sales of comparable real estate at or about the time as of which the value is to be fixed. If, upon a third trial, the evidence as to market value should be the same as on the second trial, the defendant would be entitled to an instruction limiting his liability to nominal damages.

The judgment is reversed, for proceedings consistent with this opinion.